AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>PAY-1 – Motorola Cell Phone; PAY-3 – General Imaging<br>Digital Camera; PAY-4 – Vado Creative Video Recorder;<br>PAY-5 – Silver Herald College Thumb Drive; PAY-6 –<br>Western Digital External Hard Drive, S/N: WCAZA2745687;<br>PAY-7 – Sanyo Cell Phone; PAY-8 – Maxtor External Hard<br>Drive, S/N: HA461TE; PAY-9 – Pavilion (600 series); S/N:<br>XX1151LYS; PAY-10 – Video Recordings on CD,<br>CURRENTLY LOCATED AT Homeland Security<br>Investigations Sacramento: 650 Capitol Mall STE 3-100,<br>Sacramento, CA 95814 | Case No.   2:21-sw-0877 AC |

**FILED**

**Nov 19, 2021**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

## SEE ATTACHMENT A, attached hereto and incorporated by reference.

located in the ⎸    Eastern    ⎸ District of ⎸    California    ⎸, there is now concealed *(identify the person or describe the property to be seized)*:

## SEE ATTACHMENT B, attached hereto and incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252, 2422(b) and 2423(a) | Enticement of a minor to engage in sexually explicit conduct; receipt, distribution or possession of material of minors engaging in sexually explicit conduct; transporting any individual under the age of 18 years interstate with intent to engage in criminal sexual activity |

The application is based on these facts:

## SEE AFFIDAVIT, attached hereto and incorporated by reference.

- ☑ Continued on the attached sheet.

| |
|---|
| /s/ Caitlin Thomas |
| *Applicant's signature* |

| |
|---|
| Caitlin Thomas, Special Agent, HSI |
| *Printed name and title* |

Sworn to before me telephonically.

Date:  ⎸ 11/19/21 ⎸

City and state:  ⎸ Sacramento, California ⎸

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

1   PHILLIP A. TALBERT
    Acting United States Attorney
2   ROGER YANG
    Assistant United States Attorney
3   501 I Street, Suite 10-100
    Sacramento, CA 95814
4   Telephone: (916) 554-2700
    Facsimile: (916) 554-2900
5

6   Attorneys for Plaintiff
    United States of America
7

8                    IN THE UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   In the Matter of the Search of:              CASE NO.

12   PAY-1 – Motorola Cell Phone; PAY-3 –         AFFIDAVIT IN SUPPORT OF AN APPLICATION
     General Imaging Digital Camera; PAY-4 –      UNDER RULE 41 FOR A WARRANT TO
13   Vado Creative Video Recorder; PAY-5 – Silver SEARCH DEVICES
     Herald College Thumb Drive; PAY-6 –
14   Western Digital External Hard Drive, S/N:
     WCAZA2745687; PAY-7 – Sanyo Cell Phone;
15   PAY-8 – Maxtor External Hard Drive, S/N:
     HA461TE; PAY-9 – Pavilion (600 series); S/N:
16   XX1151LYS; PAY-10 – Video Recordings on
     CD, CURRENTLY LOCATED AT Homeland
17   Security Investigations Sacramento: 650 Capitol
     Mall STE 3-100, Sacramento, CA 95814
18

19

20          1.      I, Caitlin Thomas, being first duly sworn, hereby depose and state as follows:

21                    **I.        INTRODUCTION AND AGENT BACKGROUND**

22          2.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of

23   Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—

24   which are currently in law enforcement possession, and the extraction from that property of

25   electronically stored information described in Attachment B.

26          3.      I have been employed as a Special Agent with Homeland Security Investigations ("HSI")

27   since April 2019 and am currently assigned to the Cyber and Child Exploitation group in Sacramento,

28   California.  While employed by HSI, I have participated in investigating federal criminal violations

AFFIDAVIT                                        1

related to high technology or cybercrime, Child Exploitation Material ("CEM"), and Child Sexual Abuse Material ("CSAM"). I trained at the Federal Law Enforcement Training Center ("FLETC") and have gained experience through everyday work conducting these types of investigations. I have received training in the areas of CEM and CSAM and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2252A, as well as §§ 2422 and 2423, and I am authorized by law to request a search warrant.

4. This affidavit is submitted in support of a search warrant for evidence, contraband, and instrumentalities of violations of 18 U.S.C. §§ 2251, 2252, and 2252A, as well as §§ 2422 and 2423. As set forth below, there is probable cause to believe that such items, as set forth in Attachment B, attached hereto and incorporated herein by reference, will be found at the locations described in Attachment A, which is also attached hereto and incorporated herein by reference.

5. HSI is investigating a broad range of conduct by Joshua David PRICE, but this warrant concerns conduct by PRICE in 2011. The statute of limitations for child pornography, sex trafficking, sex abuse, and coercion and enticement cases was eliminated on July 27, 2006 with the enactment of 18 U.S.C. § 3299. The potential violations of 18 U.S.C. §§ 2251(a), 2252, and §§ 2422 and 2423 have not been previously prosecuted, therefore there are no Double Jeopardy, immunity, or other due process concerns regarding this investigation.

6. The facts set forth in this affidavit are based on information provided to me by a special agent from HSI San Diego, and other law enforcement officers, my review of records related to this investigation; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of an application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II.   APPLICABLE LAW

7.      18 U.S.C. § 2251(a) prohibits any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in any sexually explicit conduct for the purpose of producing any explicit depiction of such conduct or for the purpose of transmitting a live depiction of such conduct.

8.      18 U.S.C. § 2252(a)(2) prohibits the knowing receipt or distribution, by computer or mail, of any visual depiction of minors engaging in sexually explicit conduct, if the visual depiction has been mailed, shipped, or transported in interstate or foreign commerce, or if it contains materials that have been so mailed, shipped, or transported, by any means, including by computer.

9.      18 U.S.C. § 2252(a)(4)(B) prohibits the possession of one or more matters that contain visual depictions of minors engaged in sexually explicit conduct, and that have been mailed, shipped, or transported in interstate or foreign commerce, or if it contains materials that have been so mailed, shipped, or transported, by any means, including by computer.

10.      18 U.S.C. § 2422(b) prohibits a person from knowingly persuading, inducing, enticing, or coercing any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense.

11.      18 U.S.C. § 2423(a) prohibits a person from knowingly transporting any individual who has not attained the age of 18 years in interstate or foreign commerce with intent that the individual engage in prostitution or in any criminal sexual activity.  Attempts to transport a minor with the intent that the minor engage in illegal sexual activity are punished in the same manner under § 2423(e).

## III.   IDENTIFICATION OF THE DEVICES TO BE EXAMINED

12.      The following items to be searched were transferred from Klamath Falls Police Department ("KFPD") to the custody of HSI Sacramento after being seized from Joshua D. PRICE by the KFPD on August 5, 2011, pursuant to PRICE's consent to search:  PAY-1 – Motorola Cell Phone; PAY-3 – General Imaging Digital Camera; PAY-4 – Vado Creative Video Recorder; PAY-5 – Silver Herald College Thumb Drive; PAY-6 – Western Digital External Hard Drive, S/N: WCAZA2745687; PAY-7 – Sanyo Cell Phone; PAY-8 – Maxtor External Hard Drive, S/N: HA461TE; PAY-9 – Pavilion (600 series); S/N: XX1151LYS; PAY-10 – Video Recordings on CD, hereinafter the "Devices."  The Devices are currently located in the evidence room at Homeland Security Investigations Sacramento:

650 Capitol Mall STE 3-100, Sacramento, CA 95814.  The KFPD has preserved the Devices and stored them since their seizure.

13.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## IV.     PROBABLE CAUSE

### Information Received from HSI San Diego

14.     In or about April 2021, an HSI San Diego Special Agent ("SA"), while acting in an undercover capacity, assumed the persona of an 11-year-old female on various mobile-based chat applications.  This SA (hereinafter referred to as Undercover Agent ("UCA")) received a private message on an anonymous chatting application, Whisper, from a user who was later identified as Joshua David PRICE.  On multiple occasions and across different mobile-based chatting applications, PRICE was made aware of the age of the UCA's persona.  On September 1, 2021, and September 9, 2021, your affiant reviewed screenshots of these conversations that took place between April 9, 2021, and April 22, 2021; the following is a summary of what was observed:

The UCA posted on Whisper,[1] "6th grade sucks online!!!! So bored."  Another Whisper user, "bob," initiated the conversation and questioned whether the UCA was 11-years old.   Once the UCA confirmed her age, "bob" asked whether the UCA wanted to make money and stated that he "liked young girls."  In response, the UCA asked how she would make money, and "bob" responded: "By being my friend and if your [sic] down by getting naughty."  The UCA claimed to be a virgin and shy, to which "bob" replied "I love that I pay to take it."  Later in the conversation, "bob" provided the following Kik username, "dragonisinogard," and notified the UCA that his name on Kik was "Josh."

Following an exchange of Kik usernames, PRICE initiated the conversation on Kik.  The Kik profile associated with username "dragonisnogard" showed a full name of "Josh Price."  Despite knowing the assumed age of the UCA, PRICE asked the UCA the following questions:
"Have you touched or seen a dick irl"
"Do you watch pron[sic]?"
"You touch yourself yet?"
"Have you started developing?"
"Have you touched your pussy?"
"Have you stuck anything in?"

Additionally, PRICE questioned whether the UCA wanted to make money; when asked how to

---

[1] Whisper, a free mobile application, is a form of anonymous social networking allowing users to post and share photo and video messages anonymously.  The posts, called "whispers," consist of text that is superimposed over an image that is chosen by the user.

do so, PRICE responded with the following:

> "This is my pricing levels
> 25 just talking nothing sexual pics occasional videos an [sic] video chats just cas [sic] plus bonuses if you do do something extra I pay for it
> 100 a month for that plus nudity
> 200 a month for all that plus meets
> This first meet is 300 for location, than we meet at a mall or food place of your choice. I feed you and take you shopping, nothing more unless you request I also give you 300 for just meeting me plus the stuff I buy for you
> For your first sexual experience, I pay 750 for vaginal 1000 for anal and 250 for first blowjob
> After that the meets are included in the 300 price but you can earn bonuses
> Let me know tier 1, 2 or 3.
> By the way pricing is lower so you can make more each month by asking daddy for it instead of being paid all upfront and than not having anything left later.
> All prices negotiable."

That same day, the UCA provided a photo depicting a clothed female undercover agent posing as the assumed persona.  PRICE responded with "I wanna kiss you and fuck you."  He later continues, "I'm ngl I am sitting here looking at it thinking how your face would look with my cum on it."  Shortly thereafter, PRICE uploaded a photo depicting an erect penis of an adult male and asked, "What do you think?"  The UCA asked if PRICE was okay that the UCA is 11 years old.  PRICE responds with, "Idc about your age.  If you wanna fuck me that's your choice."  PRICE later stated, "you could be 6 n I'd still do it."

PRICE uploaded a total of five images to the Kik conversation.  One image depicts a flaccid penis of an adult male; three images depicting the erect penis of what appears to be the same adult male; and another image depicting a nude adult male standing upright.

[AGENT's NOTE: The nude adult male pictured standing upright appeared to match the appearance and likeness of PRICE from public databases and open-source materials and additional images described below.]

Additionally, PRICE uploaded two video files to the Kik conversation.  One video, approximately 8 seconds in length, depicts an adult male, who is nude from the waist down, masturbating.  The second video, approximately four seconds in length, depicts a close-up view of a clothed male's crotch; movement (pulsation) is observed in the genital area.

### Initial HSI Sacramento Investigation

15.    On August 19, 2021, your affiant received notification that PRICE was arrested on an unrelated warrant in or about July 2021, and extradited to Sacramento, CA.  That same day, California Department of Corrections and Rehabilitation Parole Agent ("PA") Jeffrey Lewis advised your affiant of the following:

PRICE is pending trial in case #21FE002639(01) – Warrant Arrest PC 290.018(B) Felony: FAIL TO REGISTER NEW ADDRESS W/IN FIVE WORKING DAYS.  Bail was originally set for $50,000.00; however, the Sacramento Superior Court eliminated PRICE's bail and entrusted him to report to pre-trial supervision.  On August 16, 2021, PA Lewis picked up PRICE from jail; pursuant to a parole search of PRICE's phone, PA Lewis found many graphic images and chats with whom he believed to be minor females.  PRICE was immediately arrested and transported back to Sacramento County Jail that same day.

16.    On August 23, 2021, your affiant received a copy of a police report from the La Crosse (Wisconsin) Police Department ("LCPD") documenting undercover chats with PRICE in or about June 2021, over various mobile-based chat application platforms.  The law enforcement officer acting in an undercover capacity received a message from a user with the name "Josh PRICE" on the Kik platform. In the Kik conversation that took place between June 11-18, 2021, PRICE became very graphic in detail regarding the sexual things he wanted to do with what he believed was a 15-year-old.  PRICE commented that he doesn't "see age like other guys" and that he "was up in Necedah two years ago fucking a 14-year-old."  Additionally, PRICE sent an image of his face and body; later, PRICE sent a nude photo of himself in which his body was visible from the knees up.  PRICE also sent multiple images of his erect penis and numerous videos of himself masturbating and ejaculating.

17.    Records and database queries revealed PRICE's criminal history as follows:

a)    California Criminal Identification Number: CA25387182 – Arrested and convicted circa 2016 for felony violations of California Penal Codes (CA PC) 288.2(a)(2) – Sexual Harmful Matter to a Child; 311.11(a) – Possession of Child Pornography; and two counts of 288.3(a) – Contact with a Minor with Intent of Sex.  PRICE was sentenced to 40 months in jail.  In 2018, PRICE was arrested and convicted for violation of parole; he received a sentence of probation supervision and 90 days in jail.  In 2019, PRICE was arrested and convicted for violation of parole; he received a sentence of 180 days in jail and probation supervision.

b)    Oregon Criminal Identification Number: OR19097846 – Arrested on August 6, 2011 and subsequently charged for violations of Oregon PC 163.355 – Rape in the Third Degree; 163.385 – Sodomy in the Third Degree; 163.405 – Sodomy in the First Degree; 163.432 – Online Sexual

Corruption of a Child in the Second Degree; 163.670 – Using Child in Display of Sexually Explicit Conduct; 163.684 – Encouraging Child Sexual Abuse in the First Degree; and 163.688 – Possession of Materials Depicting Sexually Explicit Conduct of a Child in the First Degree. These state charges were subsequently dismissed on November 10, 2011.

18.    On or about August 31, 2021, PA Lewis informed your affiant that he turned over PRICE's phone to the Sacramento Valley Hi-Tech Crimes Task Force for a forensic extraction and subsequent analysis.

19.    On September 8, 2021, Sacramento County Sheriff's Department ("SSD") Detective Matthew Blanco, a member of the Sacramento Internet Crimes Against Children Task Force, notified your affiant that PRICE's phone was successfully extracted and processed.  Det. Blanco confirmed that there were 11 images of Child Abuse Material ("CAM"), and 75 images of Child Exploitive (Non-CAM)/Age Difficult.

20.    On September 24, 2021, SSD Det. Blanco interviewed PRICE at the Rio Consumnes Correctional Center.  The following is a summary of the interview:

PRICE claimed that he didn't have Kik on his phone; however, he did admit to using Whisper on and off since 2016, having sexual conversations, and using it to look "for porn and shit like that." PRICE claimed that he would ask for "ID and ask them to verify their age."

When questioned if any of these females sent him any photos or videos, PRICE stated that, "some did but you know, most of them, they look 18."  When Det. Blanco asked if any of them looked under 18, PRICE responded, "No, not that I know of, except for the one that was up in Canada."

PRICE assured Det. Blanco that he doesn't view child pornography because he doesn't "like that shit anymore" and doesn't "want to come back to this place."

When questioned if PRICE had a sexual interest in children, PRICE admitted, "not children, but teens."  PRICE explained the following:
"To be very honest with you and everything, if I had to do it, like I said, 16 and up because you know, I don't see a problem – see, my problem with the government is that you know, at 16 you can drive a car and everything and then, certain states they're legal, but then other states they're not.  And it's just like, the governments do not make any sense."

PRICE revealed that his first girlfriend, who he had pictures of still backed up to the Cloud, "was 12 when [he] first met her."  He stated that she lied about her age and said she was 16 and that she was out in Baltimore.  PRICE admitted that he told her he loved her, and that's when she revealed how young she was.  PRICE said, "Now, I had means, I had motive, I had opportunity

all that. You know, I could've flown out to Baltimore that night." PRICE claimed that he stopped talking to her but realized he "still wanted to get to know her. Still wanted to… be with her and everything." PRICE claimed to have told her that they are not meeting until she's older and that he doesn't mind her age, but they can't be sexual. PRICE later admitted, "that was also when [he] was extremely a lot younger and still a virgin… so "[he] wasn't exactly thinking at that time too." He claimed that he had "12-year-olds that were sexually active and…talking to [him] and basically, if [he] had the money and wanted to, [he] could've gone to Baltimore."

When discussing PRICE's prior conviction for possession of child pornography in 2016, PRICE stated that he had found a 16-year-old girl on Whisper. PRICE claimed that he was lonely, grieving, and upset. When they started to become sexual, PRICE stated, he "didn't think anything too much about it because you know, she's 16[2]. It's not [like] she's 2 or 9 or something."

Following the interview, PRICE was arrested on additional violations of CA PC 311.11(A) – POSS/ETC OBSCENE MATR:MNR:SEX ACT (Misdemeanor) as well as 311.11(B) – POSS OBS MATR:MNR:ATTEMPT (Felony).

### Receipt of Information from Klamath Falls Police Department

21.    On September 3, 2021, your affiant contacted the KFPD to request records pertaining to the arrest of PRICE on August 6, 2011, in Oregon. On September 9, 2021, your affiant received the requested reports from KFPD; the following is a summary of the reports received:

On August 5, 2011, KFPD was notified via an anonymous report that a 22-year-old male, later identified as PRICE, was having sex with a 16-year-old female (hereinafter referred to as Victim 1, "V1"). V1 was encountered at the PRICE residence located at 2210 Radcliffe Avenue, Klamath Falls, OR 97601 and later determined to be 15-years-old.[3] V1 agreed to speak with KFPD Officer K. Gordon outside of the residence; V1 later agreed to speak with KFPD Officer York at the station. V1 disclosed that she met PRICE through Chatzppl[4]. In or about February 2011, PRICE flew to V1's hometown in Randallstown, Maryland;[5] V1 was

---

[2] Under California Law, the legal age of consent is 18, unless the perpetrator is less than three years older or younger than the minor. Cal. Penal Code § 261.5(a) and (b).

[3] Under Oregon Law, the legal age of consent is 18, unless the perpetrator is less than three years older than the minor, and the minor is 16 or older. ORS § 163.345

[4] Chattzppl.webs.com is a free online chat room for everyone, with no registration required. Chatzppl advertises free chat rooms for kids, teens, adults, seniors, gay, lesbian, singles, and more. In order to participate, Chatzppl requires that users be a minimum of 13 years of age or older.

[5] According to Google Maps, Randallstown, MD is approximately 12.3 miles from Baltimore.

approximately 14-years-old at the time.  PRICE purchased a room at Motel 6 and stayed in Maryland for approximately two weeks.  V1 engaged in oral and vaginal sex with PRICE multiple times throughout the two weekends that V1 stayed with PRICE.  V1 and PRICE continued contact over the next several months; PRICE planned to have V1 fly to Klamath Falls in or about July 2011.  V1 believes that PRICE's grandmother or mother provided him the funds to pay for her flight from Maryland to Sacramento, CA.  PRICE subsequently drove down to Sacramento, CA to pick V1 up from the airport on July 27, 2011 and drove her back to his residence in Oregon.  PRICE videotaped V1 approximately three times while in Oregon when they were engaged in oral and vaginal sex.  V1 also disclosed that photos of herself were sent to PRICE via texting and an internet program called Team Viewer.[6]

Following the disclosures made by V1, KFPD Officer York interviewed PRICE.  PRICE stated that he kept nude photos of V1 on an external hard drive.  PRICE disclosed that he initially met V1 online on or about 2009; PRICE was told V1 was 16-years old; however, V1 later admitted to him approximately one month later that she was 12-years-old.  These conversations were all happening while he was living in Sacramento, CA.  PRICE confirmed his travel to Maryland in 2011, meeting with V1 in a motel room, and engaging in oral and vaginal sex with V1.  PRICE also confirmed purchasing a plane ticket for V1 from Baltimore, Maryland to Sacramento, CA.  Furthermore, PRICE stated that he drove to Sacramento, CA with his brother and a friend to pick up V1 from the airport.  PRICE disclosed that they experienced van troubles and needed to stay in Sacramento for two days after picking up V1.  PRICE further disclosed that the first night in Sacramento, V1 performed oral sex on PRICE and then engaged in vaginal sex.

Following the interview, PRICE signed a consent to search form for his residence and stated, "I made my bed and I'll lie in it."  PRICE proceeded to help the KFPD officers locate items in his room that he used for storing photos and videos.

---

[6] Team Viewer is a proprietary software application for remote control, desktop sharing, online meetings, web conferencing and file transfer between computers.

The following digital items were seized from PRICE's residence in Oregon (2210 Radcliffe Avenue, Klamath Falls, OR 97601) and maintained in evidence by the KFPD and are the subject of this search warrant application:

1. PAY-1 – Motorola Cell Phone
2. PAY-3 – General Imaging Digital Camera
3. PAY-4 – Vado Creative Video Recorder
4. PAY-5 – Silver Herald College Thumb Drive
5. PAY-6 – Western Digital External Hard Drive, S/N: WCAZA2745687
6. PAY-7 – Sanyo Cell Phone
7. PAY-8 – Maxtor External Hard Drive; S/N: 2HA461TE
8. PAY-9 – Pavilion (600 series); S/N: MXX1151LYS
9. PAY-10 – Video Recordings on CD

22.     The Devices were in the lawful possession of the Klamath Falls Police Department located at 2501 Shasta Way, Klamath Falls, OR 97601.  On September 24, 2021, your affiant requested that these devices be transferred to HSI Sacramento.  On October 7, 2021, the Devices were transferred to and are currently in the custody of HSI Sacramento in the evidence room located at 650 Capitol Mall STE 3-100, Sacramento, CA 95814.  Therefore, although law enforcement might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

## V.     TECHNICAL TERMS

23.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a)     "Bulletin Board" means an Internet-based website that is either secured (accessible with a password) or unsecured and provides members with the ability to view postings by other members and make postings themselves.  Postings can contain text messages, still images, video images, or web addresses that direct other members to specific content the poster wishes. Bulletin boards are also referred to as "internet forums" or "message boards."  A "post" or "posting" is a single message posted by a user.  Users of a bulletin board may post messages in reply to a post.  A message "thread," often labeled a "topic," refers to a linked series of posts and reply messages.  Message threads or topics often contain a title, which is generally selected by

the user who posted the first message of the thread.  Bulletin boards often also provide the ability for members to communicate on a one-to-one basis through "private messages."  Private messages are similar to e-mail messages that are sent between two members of a bulletin board. They are accessible only by the users who sent/received such a message, or by the bulletin board administrator.

b)      "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

c)      "Chat room," as used herein, refers to the ability of individuals to meet in one location on the Internet in order to communicate electronically in real-time to other individuals. Individuals may also have the ability to transmit electronic files to other individuals within the chat room.

d)      "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

e)      "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

f)      "Cloud storage," as used herein, is a form of digital data storage in which the digital data is stored on remote servers hosted by a third party (as opposed to, for example, on a user's computer or other local storage device) and is made available to users over a network, typically the Internet.

g)      "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices.  See 18 U.S.C. § 1030(e)(1).

h)      "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

i)      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

j)      The "Domain Name System" or "DNS" is system that translates readable Internet domain names such as www.justice.gov into the numerical IP addresses of the computer server that hosts the website.

k)      "Encryption" is the process of converting data into a code in order to prevent unauthorized access to the data.

l)      A "hidden service," also known as an "onion service," is website or other web service that is accessible only to users operating within the Tor network.

m)      "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

n)      The "Internet" is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

o)      "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

p)      An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet.  Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination.  Most Internet Service Providers ("ISPs") control a range of IP addresses.  IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet.  IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.  ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

q)      "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

r)      "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

s)      "Remote computing service," as defined in 18 U.S.C. § 2711(2), is the provision to the

public of computer storage or processing services by means of an electronic communications system.

t)      "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

u)      A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

v)      The "Tor network" is a computer network available to Internet users that is designed specifically to facilitate anonymous communication over the Internet.  The Tor network attempts to do this by routing Tor user communications through a globally distributed network of relay computers, along a randomly assigned path known as a "circuit."

w)      "URL" is an abbreviation for Uniform Resource Locator and is another name for a web address.  URLs are made of letters, numbers, and other symbols in a standard form.  People use them on computers by clicking a pre-prepared link or typing or copying and pasting one into a web browser to make the computer fetch and show some specific resource (usually a web page) from another computer (web server) on the Internet.

x)      "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

y)      A "Website" consists of textual pages of information and associated graphic images.  The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

## VI.   ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.   Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.   Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.   This information can sometimes be recovered with forensics tools.

25.   There is probable cause to believe that things that were once stored on the Devices may still be stored there, for at least the following reasons:

a)   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.   Electronic files downloaded to a storage medium can be stored for years at little or no cost.   Even when files have been deleted, they can be recovered months or years later using forensic tools.   This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b)   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c)   Wholly apart from user-generated files, computer storage media-in particular, computers' internal hard drives-contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.   To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.   Computer users typically do not erase or delete this evidence, because special software is typically required for that task.   However, it is technically possible to delete this information.

d)   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

26.   Forensic evidence.   As further described in Attachment B, this application seeks

permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a)      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

    b)      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c)      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d)      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e)      Further, in finding evidence of how a device was used, the purpose of its use, who used

1   it, and when, sometimes it is necessary to establish that a particular thing is not present on

2   a storage medium.

3       27.   Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the

4   warrant I am applying for would permit the examination of the devices consistent with the warrant.

5   The examination may require authorities to employ techniques, including but not limited to computer-

6   assisted scans of the entire medium, that might expose many parts of the devices to human inspection in

7   order to determine whether it is evidence described by the warrant.

8       28.   Manner of execution.  Because this warrant seeks only permission to examine devices

9   already in law enforcement's possession, the execution of this warrant does not involve the physical

10  intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize

11  execution of the warrant at any time in the day or night.

## VII.    CONCLUSION

29.   Based on the foregoing, there is probable cause to believe that the federal criminal

statutes cited herein have been violated, and that the contraband, property, evidence, fruits, and

instrumentalities of these offenses, more fully described in Attachment B, are located in the devices

described in Attachment A.  I respectfully request that this Court issue a search warrant for the devices

described in Attachment A, authorizing the seizure and search of the items described in Attachment B.

30.   I am aware that the recovery of data by a computer forensic analyst takes significant

time; much the way recovery of narcotics must later be forensically evaluated in a lab; digital evidence

*The remainder of this page intentionally left blank*

will also undergo a similar process.  For this reason, the "return" inventory will contain a list of only the tangible items recovered from the Devices.  Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

Respectfully submitted,

/s/ Caitlin Thomas
_____
Caitlin Thomas
Special Agent
Homeland Security Investigations (HSI)

Subscribed before me telephonically on:                    November 19, 2021
                                                          _____

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE


 /s/ ROGER YANG
_____
Approved as to form by AUSA ROGER YANG

## ATTACHMENT A

The property to be searched is the following set of digital devices:  a PAY-1 – Motorola Cell Phone; PAY-3 – General Imaging Digital Camera; PAY-4 – Vado Creative Video Recorder; PAY-5 – Silver Herald College Thumb Drive; PAY-6 – Western Digital External Hard Drive, S/N: WCAZA2745687; PAY-7 – Sanyo Cell Phone; PAY-8 – Maxtor External Hard Drive, S/N: HA461TE; PAY-9 – Pavilion (600 series); S/N: XX1151LYS; PAY-10 – Video Recordings on CD, hereinafter the "Devices."  The Devices are currently located at Homeland Security Investigations Sacramento: 650 Capitol Mall STE 3-100, Sacramento, CA 95814.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

The items to be seized are the following materials, which constitute evidence of the commission of a criminal offense, contraband, instrumentalities, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2251, 2252 and 2252A, and 2422(b) and 2423:

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which are stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

e.  evidence relating to use of Tor, the Dark Web, or other alternatives to the traditional Internet;

f.  evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

g.  evidence of communications with minors relating to transportation and sexual activity; with minors' relatives, with PRICE's friends, siblings, and relatives relating to transportation of minors or sexual activity with minors, and evidence of travel arrangements involving minors;

h.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

i.  evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

j.  evidence of the times the COMPUTER was used;

k.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

l.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

m.  records of or information about Internet Protocol addresses used by the COMPUTER;

n.  evidence concerning the use of digital cameras, recording devices, and other means of creating visual depictions of minors engaged in sexual conduct;

o.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

p.  contextual information necessary to understand the evidence described in this attachment.

3. Routers, modems, and network equipment used to connect computers to the Internet.

4. Child pornography, as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), and child erotica.

a.  Records, information, and items relating to violations of the statutes described above including:

b.  Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

c.  Records and information about payments or transfers, including Bitcoin or other cryptocurrencies, relating to the sexual exploitation of children;

d.  Records and information relating to sexual exploitation of children, including correspondence and communications between users of child pornography and exploitation websites.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro-SD cards, macro-SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of<br>PAY-1 – Motorola Cell Phone; PAY-3 – General Imaging<br>Digital Camera; PAY-4 – Vado Creative Video Recorder; PAY-<br>5 – Silver Herald College Thumb Drive; PAY-6 – Western<br>Digital External Hard Drive, S/N: WCAZA2745687; PAY-7 –<br>Sanyo Cell Phone; PAY-8 – Maxtor External Hard Drive, S/N:<br>HA461TE; PAY-9 – Pavilion (600 series); S/N: XX1151LYS;<br>PAY-10 – Video Recordings on CD, CURRENTLY LOCATED<br>AT Homeland Security Investigations Sacramento: 650 Capitol<br>Mall STE 3-100, Sacramento, CA 95814 | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.        2:21-sw-0877 AC |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ___Eastern___ District of ___California___ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*      ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     ___11/19/21 @ 3:32 p.m.___

City and state:     ___Sacramento, California___

*allison claire*

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

_____            _____
Signature of Judge                                                    Date

## **ATTACHMENT A**

The property to be searched is the following set of digital devices:  a PAY-1 – Motorola Cell Phone; PAY-3 – General Imaging Digital Camera; PAY-4 – Vado Creative Video Recorder; PAY-5 – Silver Herald College Thumb Drive; PAY-6 – Western Digital External Hard Drive, S/N: WCAZA2745687; PAY-7 – Sanyo Cell Phone; PAY-8 – Maxtor External Hard Drive, S/N: HA461TE; PAY-9 – Pavilion (600 series); S/N: XX1151LYS; PAY-10 – Video Recordings on CD, hereinafter the "Devices."  The Devices are currently located at Homeland Security Investigations Sacramento: 650 Capitol Mall STE 3-100, Sacramento, CA 95814.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

The items to be seized are the following materials, which constitute evidence of the commission of a criminal offense, contraband, instrumentalities, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2251, 2252 and 2252A, and 2422(b) and 2423:

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which are stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

e.  evidence relating to use of Tor, the Dark Web, or other alternatives to the traditional Internet;

f.  evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

g.  evidence of communications with minors relating to transportation and sexual activity; with minors' relatives, with PRICE's friends, siblings, and relatives relating to transportation of minors or sexual activity with minors, and evidence of travel arrangements involving minors;

h.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

i.  evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

j.  evidence of the times the COMPUTER was used;

k.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

l.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

m.  records of or information about Internet Protocol addresses used by the COMPUTER;

n.  evidence concerning the use of digital cameras, recording devices, and other means of creating visual depictions of minors engaged in sexual conduct;

o.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite"

web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

p. contextual information necessary to understand the evidence described in this attachment.

3. Routers, modems, and network equipment used to connect computers to the Internet.

4. Child pornography, as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), and child erotica.

a. Records, information, and items relating to violations of the statutes described above including:

b. Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

c. Records and information about payments or transfers, including Bitcoin or other cryptocurrencies, relating to the sexual exploitation of children;

d. Records and information relating to sexual exploitation of children, including correspondence and communications between users of child pornography and exploitation websites.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro-SD cards, macro-SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.